SCHOOL DISTRICT OF NEWPORT *v.* J. R. HOLDEN LAND & LUMBER COMPANY.

Opinion delivered June 13, 1921.

1. DEEDS—CONDITIONS SUBSEQUENT.—Restrictions in a deed as to the estate granted are presumed not to constitute conditions subse-

quent, which are not favored in law and must be clearly shown by the words of the deed.

2. Lost instrument—burden of proof.—In a suit to quiet title where plaintiff claimed under an alleged lost deed which defendants admitted having executed, the burden was on defendants to show that the deed contained a condition subsequent claimed by them.

3. Lost instruments—evidence.—In a suit to quiet title, based on an admittedly lost deed, the chancellor's finding that the deed from defendants to plaintiff contained a condition subsequent *held* not supported by the evidence.

Appeal from Jackson Chancery Court; *L. F. Reeder,* Chancellor; reversed.

*Boyce & Mack,* for appellant.

1. From the pleadings and evidence it appears fully that appellant took possession of the land under an oral gift; that the terms of the gift had been fully complied with, and that the school district was in possession and claimed to be the owner since it first took possession in 1916, and had been in actual, open, notorious, exclusive and adverse possession, claiming to be the owner against all the world, and the district's claim had ripened into a perfect title when the suit was commenced. 33 Ark. 155. Possession of land during the full period of limitation, under circumstances as would make a valid defense, amounts to *investiture of title,* which may be actually asserted in all respects as effectually as if acquired by deed. 34 Ark. 534-40. Possession for the statutory period not only bars the remedy of the holder of the paper title, but extinguishes his title and vests a fee simple title in the adverse occupant. 1 Cyc. 1135.

Trespass may start the statute of limitaions. 74 Ark. 302-5; 51 *Id.* 231-271. Claim of ownership need not exist at the time of entry. 2 C. J., p. 129, § 217; *Ib.,* pp. 133-4. A tenant may hold adversely to his landlord. 1 R. C. L., p. 747; 114 Ark. 376.

The fact of appellant's adverse possession and its claim of ownership for the full period of limitation, and

appellee's knowledge thereof, has been established beyond question, and the decree is against the clear preponderance of the evidence. The rule is that there must be proof, not only of the existence of a deed, but that its loss must be proved before secondary evidence of its contents is admissible, and the same character of evidence and degree of evidence are required to prove the loss as is required to prove the existence of a deed. 25 Cyc., pp. 1625-7.

2. Title by adverse possession is sufficient to found an action to quiet title. 1 Cyc. 1138; 32 *Id.* 1330; 5 R. C. L. 650; 9 L. R. A. 772; 46 L. R. A. (N. S.) 499; 94 Am. Dec. 722; 92 Ark. 289; 83 *Id.* 534. The chancellor erred in quieting title on the condition named in the decree.

*Gustave Jones,* for appellee.

·Appellant has wholly failed to establish its right to specific performance in any particular. Specific execution of a contract, where there has been part performance, will not be decreed unless the contract be clear and unambiguous, and it must be proved with a reasonable degree of certainty. 63 Ark. 100; 82 *Id.* 33, 43; 135 *Id.* 586, 591.

A chancellor's findings of facts will not be disturbed on appeal unless against the clear preponderance of the testimony. 120 Ark. 323; 122 *Id.* 600. See, also, 98 *Id.* 328; 126 *Id.* 46. The question of adverse possession being one of fact, the court's finding will not be disturbed on appeal. 84 Ark. 140.

Smith, J. Appellant school district brought this suit to quiet its title to a certain block in the city of Newport. It alleged it was in possession of the block, and was occupying it for school purposes—one of the public school buildings being located thereon. It was alleged that a deed to the land had been executed, and thereafter appellant entered into the possession of the block and built an expensive and valuable school building thereon. That this deed had never been delivered and had never been recorded.

The answer admitted the execution of the deed, and alleged that the deed had been delivered. The answer further alleged that the block was donated to the appellant school district, and that the deed contained a condition subsequent to the following effect: Upon the condition that said district erect a brick school building and maintain a public school on said premises, to be equipped and have the same facilities and the same length of term as was conducted by said district in the main city of Newport, and that said block was conveyed with the condition that said premises should be so used, and that, upon failure to build, maintain and construct such a school, the land should revert to the grantor.

There is no question about the execution of the deed. The question is, what its terms and conditions were, and there is irreconcilable conflict in the testimony of a number of witnesses. These witnesses testified about a transaction then about fourteen years old, and much of this conflict can be ascribed to infirmities of memory.

On behalf of appellant district the following persons testified: S. R. Phillips, Tom J. Gregg, T. P. Umsted, H. O. Walker, E. L. Boyce, P. H. Van Dyke, A. L. Best, J. F. Parish, R. F. Drummond, W. T. Parish, and Charles Myer. The witnesses on behalf of appellee were: W. D. McLain, Gustave Jones and J. R. Holden.

The land in question was owned by McLain and Holden. It was a part of an addition to the town of Newport which had just been platted as an addition, and it is quite obvious that they were anxious to have a schoolhouse built in this addition. They executed a deed for the land on April 26, 1906, to the McLain & Holden Land & Lumber Company, a corporation, whose stock was owned almost entirely by themselves. The name of this corporation was later changed to J. R. Holden Land & Lumber Company. Shortly after the execution of this deed to the corporation by Holden and McLain, the corporation executed the deed in question to the school district. The deed was executed on behalf of the corporation by Holden as president and McLain as secretary.

The minutes of the meeting of the school board held on January 27, 1906, were read in evidence. At this meeting the following resolution was adopted:

"Whereas, said W. D. McLain and J. R. Holden propose to donate to the Newport Special School District of Newport, Arkansas, said block designated number eighteen, provided said district construct and supply a school building thereon, therefore, be it resolved that said offer of W. D. McLain and J. R. Holden be and the same is hereby accepted upon the conditions of said offer. Resolved, further, that the building committee of the board of directors of said special school district be and it is hereby designated to provide for and construct and supply a school building upon said block designated eighteen on said quarter section.

"On roll call, voted, J. M. Jones, 'yes;' C. West, 'yes;' R. F. Drummond, 'yes;' Charles Meyer, 'yes,;' W. R. Thompson, 'yes;' and Gustave Jones, 'yes;' carried."

The roll call shows that all of the directors present voted for the resolution, and included in this number was Mr. Gustave Jones. The minutes of the school board further recite that McLain was present at this meeting and presented a petition enlarging the boundaries of the school district.

Thus it appears that two of the three witnesses for appellee were present when the resolution was adopted. At a later meeting of the board held on February 24 McLain was employed to assist in the construction of the school building.

According to the testimony of McLain, Holden and Jones, the deed contained the condition subsequent that the property should revert to the grantors if the grantee ceased to maintain a white school on the block conveyed.

It is quite clear that the gentlemen who so testified have that recollection of the transaction, and Mr. Jones testified that he was the only lawyer on the school board, and that he was for that reason requested to write the deed, and that he wrote it, and that it recited an agree-

ment on the part of the district to put up a schoolhouse and maintain a school there for white people for an equal length of time and with equal facilities with reference to teachers and equipment as the Walnut Street school, this latter being the principal school in Newport, and that the deed recited that the lot was to be used for school purposes only, and when it ceased so to be used was to revert to the grantors.

It was the purpose of the district to conduct a white school on the land conveyed, and that purpose has since been followed. But it is a different matter to say that the deed incorporated a recital of that purpose as a condition subsequent.

The only writing on the subject offered in evidence is the resolution of the board set out above. This resolution was prepared and adopted at a meeting attended by both McLain and Jones. It purports to set out the condition on which the donation was to be made. The donation had not then been made. It had been proposed, and one of the men who proposed it was present when the board determined whether the donation would be accepted. The resolution of acceptance recited the condition upon which the donation was proposed, and that recital is that the district should construct and supply a school building thereon. This condition was met, and, whatever may have been the idea of any of the participating parties as to the subsequent use the district would make of the land, we think the testimony does not show that there was written into the deed any condition not contained in the resolution of acceptance.

The deed was not produced, and the testimony is conflicting as to its loss. A strong affirmative showing on the part of the district was made that the deed was never delivered. It is also insisted on behalf of the district that the deed was shown to have been in the hands of McLain after the controversy arose over its recitals. It is fair to McLain to say, however, that, while he made statements about the deed, leaving the impression that he knew where the deed was, he furnished the explanation

that his statement had been made under a misapprehension of the facts—it being his impression that the deed had been found by the secretary of the school board among the papers belonging to the district, when it had not been so found. There was also testimony to the effect that Holden, one of the parties who executed the deed, had made admissions in regard to its provisions which were in conflict with his contention and testimony at the trial.

If the deed itself was before us for construction, there would be a presumption that the restrictions of the estate granted did not constitute a condition subsequent. In the case of *Bain* v. *Parker,* 77 Ark. 170, the court said: ''Conditions subsequent that defeat the estate conveyed by the deed are not favored in law. The words of the deed must clearly show a condition subsequent, or the courts will take it that none was intended; and when the terms of the grant will admit of any other reasonable interpretation, they will not be held to create an estate on condition. Now, if we treat the deed as containing the words referred to, there are still no words of condition in the deed, and no words indicating that the estate should be forfeited if the road was not completed at the date named. These words then import nothing more than a covenant which, upon the acceptance of the deed by the grantee, became binding upon him, and for the breach of which the grantor may recover damages suffered thereby, but the deed remains valid.'' (Citing cases).

So here we think it fair to say that, the execution of the deed being admitted, the burden is upon the grantors to show that it contained a condition subsequent.

In addition to the testimony set out above, the district makes the most unequivocal showing that the deed was not to contain a condition subsequent, and that the terms of the donation were met when the schoolhouse was built.

The gentlemen named as having testified on behalf of the district either were the directors thereof at the

time of the donation or succeeded others in office, and all gave testimony tending strongly to support the district's contention.

Meyer, who voted for the resolution accepting the donation, testified that no conditions were discussed other than that the land was donated to the school district to be used for school purposes and to erect a schoolhouse on. The minutes of the school board show that this witness was unusually attentive to his duties, and that he rarely missed a meeting of the board. He testified that no deed was ever delivered to the board. Mr. Drummond, who also voted for the donation resolution at the meeting of the school board, testified that the only condition he remembers anything about was that the land was to be donated to the school district, and the board was to erect a building on it.

The court entered a decree divesting the title out of the corporation and vesting it in the school district "so long, and only so long, as the same is used for school purposes, and for white children only." It was also ordered that each party pay half of the costs, and both parties have appealed.

Without setting out in further detail the testimony of the various witnesses, we announce our conclusion to be that the finding of the chancellor is contrary to the preponderance of the evidence, and that the only condition of the donation was that the school district should construct and supply a schoolhouse, and that, if this was a condition, instead of a covenant, it was a condition precedent, which was performed when the district erected the schoolhouse, and that the title to the land immediately vested in the district upon the happening of that event.

The decree of the court below is therefore reversed and the cause will be remanded with directions to enter a decree quieting the title of the school district in accordance with this opinion.